BaRney, J.,
delivered the opinion of the court:
This is the suit of a captain of Cavalry, with over 15 years’ service to his credit, to recover for 3 month’s half pay, amounting to $325, alleged to have accrued to him while on leave of absence without pay.
In order to enable him to enter the employment of a commercial company, he was granted a leave of absence for six months from January 1, 1907, to June 30, 1907. This leave was afterwards extended for four months, from July 1, 1907, to October 31, 1907. After he had served one month of the extension of his leave, on July 31, 1907, The Adjutant General of the Army sent a telegram to him, which stated that “by direction of the President, although your leave is not revoked, your absence from this date will be without pay.” At the time of the reception of this telegram he had three months’ unexpired leave. This action of the President was not at his request, but he made no protest thereto and did not report for duty. Pie reported, however, at the expiration of his leave, on October 31, 1907. Several years after- *53 wards he filed a claim with the Auditor for the War Department, which was disallowed by him on August 3, 1910, upon the ground that the claimant had waived his right of pay for the period claimed. The decision of the auditor was affirmed by the Comptroller of the Treasury upon the same ground on November 17,1910.
The practical effect of the order of August 1,1907, quoted in Finding III, was to change the previous order granting the claimant leave of absence with incident half pay, which he was then enjoying, so as to give him leave of absence without pay for the remaining period of leave allowed in such previous order.
The claim in this case is based upon section 1265 of the Kevised Statutes, which is as follows:
“ Officers when absent on account of sickness or wounds, or lawfully absent from duty and waiting orders, shall receive full pay; when absent with leave, for other causes, full pay during such absence not exceeding in the aggregate thirty days in one year and half pay during such absence exceeding thirty days in one year. When absent without leave, they shall forfeit all pay during- such absence, unless the absence is excused as unavoidable.”
It is contended by the claimant that the salary of a Government officer is by law attached to the office, and can not be increased, diminished, or withheld by executive officers. As a general proposition of law there is no question but that this contention is correct, and has been so often so decided by the Federal courts as to need no citation of authority. It is also contended by the claimant that the President had no power of his own motion to dismiss him, and hence could not suspend him without pay, if it should be claimed that the order of August 1,1907, was a partial and qualified dismissal, and cites in support of this contention a provision of section 1229, Kevised Statutes, which is as follows:
“And no officer in the military or naval service shall in time of peace be dismissed from service except upon and in pursuance of the sentence of a court-martial to that effect, or in commutation thereof.”
We think, however, the question involved in this case is to be decided- upon matters entirely outside of the statutes *54 quoted. By the order of August 1 the President did not grant the claimant a leave of absence under section 1265; on the contrary, he was in effect therein told that so far as his rights under that statute were concerned his leave of absence was revoked; that seven months was long enough to remain away from his official duties and attend to his private business on half pay; but that if he still preferred to do so he could go on for the balance of three months doing his own work, with the understanding that during such time he would receive no pay from the Government. Upon the receipt of such instructions he saw fit to absent himself from duty for the full time of his previous leave of absence, and the • question is whether he did not thereby accede to the conditions imposed by such instructions and waive any right to pay for the period claimed. That his conduct constituted a waiver there can be no question, unless, as contended by him in this suit, he could not lawfully waive any part of his statutory compensation, and the case of Rush v. United States (35 C. Cls. R., 223), is cited to sustain that contention. That was a case where the letter carriers in San Francisco had signed a paper waiving all right to overpay under the eight-hour law, and this court decided that under the circumstances of that case such waiver was void, and they were allowed to recover for such overtime.
The opinion in that case was rendered by the present Chief Justice, and he said that the question decided in that case was, “ Had the postmaster any right to require of the carriers a waiver of the compensation fixed by statute for services to be thereafter rendered?” (Id., 240.) It needs no argument to show that a waiver required of a letter carrier by the postmaster for pay for services actually rendered is somewhat different, to say the least, from the voluntary waiver by an Army officer of pay for the time when he was performing no services for the Government, but by preference was attending to his own business.
It is decided that the claimant by voluntarily remaining out of the service for the time claimed for, under instructions from the President that by so doing he would receive no pay, thereby waived all right to such pay, and hence the petition is dismissed.